UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

ANDY SOSA,

                      Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _1/24/2022_

14 Cr. 468-1 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Defendant, Andy Sosa, a prisoner serving his sentence at the Reeves County Detention Center III ("Reeves"), moves for a reduction of his term of imprisonment under the federal compassionate release statute, codified at 18 U.S.C. § 3582(c)(1)(A), principally in light of the COVID-19 pandemic. Def. Mem., ECF No. 535; Def. Supp. Mem., ECF No. 542. For the reasons stated below, Sosa's motion is GRANTED.

## BACKGROUND

    In 2014, Sosa was indicted, along with his co-defendants, for (1) conspiring to distribute, and possessing with the intent to distribute a variety of drugs, including cocaine and heroin; and (2) using, carrying, and possessing a firearm in furtherance of a drug crime. ECF No. 2. On April 30, 2015, the Honorable Shira Scheindlin accepted Sosa's plea of guilty to the lesser included offenses of (1) conspiracy to distribute and possess with intent to distribute mixtures and substances containing a detectable amount of heroin; and (2) using, carrying, and possessing a firearm in furtherance of that drug crime. ECF Nos. 178, 181. On December 8, 2015, Judge Scheindlin sentenced Sosa to sixty months' imprisonment on each count to be served consecutively, to be followed by five years of supervised release on each count, to be served concurrently, for a total of 120 months' imprisonment. Dkt. Entry 12/8/2015; ECF No. 337.

According to the Bureau of Prisons, Sosa's release date is March 11, 2023.[1]

On May 18, 2021, Sosa moved *pro se* for compassionate release in light of the COVID-19 pandemic. Def. Mem. at 2. On August 20, 2021, through counsel, Sosa filed a supplemental motion to reduce his sentence under 18 U.S.C. § 3582(c)(1). Def. Supp. Mem. at 1. Sosa, age 37, states that he suffers from "Type II diabetes, hypertension, high cholesterol, and hyperthyroidism," which puts him at heightened risk from COVID-19. Def. Supp. Mem. at 2. His medical records from the Bureau of Prisons ("BOP"), filed under seal with the Court, confirm these diagnoses. Sosa states that he filed a petition for compassionate release with the warden of Reeves, Def. Mem. at 1–2, Supp. Mem. at 3, though the Government states that the BOP "has no record of a compassionate release request filed by the defendant," Gov't Opp'n at 5, ECF No. 545. Sosa has not provided documentation of this request. Through counsel, Sosa submitted a second petition for compassionate release to the warden at Reeves on August 25, 2021, which was denied on September 1, 2021. ECF No. 546-1.

## DISCUSSION

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)   extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

---

[1] *See Inmate Lookup*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited January 14, 2022).

Thus, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), Sosa must meet the exhaustion requirement and demonstrate that "extraordinary and compelling reasons" warrant a reduction of his sentence. The Court should also consider the factors listed in 18 U.S.C. § 3553(a), which, as applicable here, include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct; [and]
> (C) to protect the public from further crimes of the defendant . . . .

18 U.S.C. § 3553(a).

I. <u>Exhaustion</u>

Although Sosa asserts that he properly exhausted his administrative remedies prior to filing suit, *see* Def. Mem. at 1–2, he "does not (1) provide a copy of his request to [the] BOP, (2) state the date on which he made the request to [the] BOP, (3) provide evidence that the [w]arden received such a request, or (4) provide a copy of the [w]arden's response." *United States v. Reiter*, No. 87 Cr. 132, 2020 WL 4252681, at *3 (S.D.N.Y. July 23, 2020). The Government states that the BOP has no records of any such request. Gov't Opp'n at 5. The second such request, filed by Sosa's counsel, post-dates both his initial petition for release, and his supplemental petition filed through counsel. *Compare* ECF No. 546-1 (indicating warden received request on August 25, 2021), *with* Def. Mem. (filed May 18, 2021), *with* Def. Supp. Mem. (filed August 20, 2021). On this record, the Court cannot conclude that Sosa has met his burden of demonstrating exhaustion. *See Reiter*, 2020 WL 4252681, at *3.

As the Court has previously noted, however, § 3582(c)(1)(A)'s exhaustion requirement may be waived "if one of the recognized exceptions" applies. *United States v. Valencia*, No. 15

3

Cr. 163, 2020 WL 2319323, at *3 (S.D.N.Y. May 11, 2020) (citation omitted). That is so, because "[e]ven where exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). And the Court remains convinced that "the First Step Act is the rare statute where Congress does intend for courts to be able to deem exhaustion of the BOP's administrative review procedures waived—at least in the extraordinary circumstance where requiring a defendant to complete the process or wait for 30 days before bringing his motion for compassionate release would entirely defeat the ability of the Court to grant relief." *Valencia*, 2020 WL 2319323, at *4.

Under such circumstances, exhaustion may be unnecessary "where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue." *Washington*, 925 F.3d at 118. Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief." *Id.* at 119. Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." *Id.* All three circumstances apply here, given Sosa's medical conditions, the prevalence of COVID-19 at the facility where he is serving his sentence, and the new dangers posed by the Omicron variant. Here, Sosa's counsel submitted a second, documented request to the warden at Reeves seeking his release, which was denied. ECF No. 546-1. The Bureau of Prisons has, therefore, "already determined the issue," and declined to bring suit on Sosa's behalf. Requiring Sosa to again commence the exhaustion process and re-file this petition would be little more than an exercise in futility and unwarranted delay. *See United States v. Zukerman*, 451 F. Supp. 3d 329, 333 (S.D.N.Y. 2020). Such delay could result in catastrophic health consequences—and thus, unquestionably, prejudice to Sosa—if he, as an individual with multiple comorbidities rendering him vulnerable to COVID-19, contracts the virus. *Id.* at 333 (citation omitted). Accordingly, the Court concludes that requiring Sosa to fully exhaust his

4

administrative remedies, given his unique circumstances and the exigency caused by the newest variant of the pandemic, would result in undue prejudice and render exhaustion of the full BOP administrative process both futile and inadequate. The Court holds, therefore, that waiver of the exhaustion requirement is justified under established principles of administrative law.

II.   Compassionate Release

The United States Sentencing Commission has defined "extraordinary and compelling reasons" at U.S.S.G. § 1B1.13, cmt. n.1. *See United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020). The definition, as relevant, states that extraordinary and compelling reasons for modification exist where "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). The Second Circuit recently clarified, however, that where, as here, a motion for compassionate release is brought by a defendant, rather than by the Bureau of Prisons, Guideline § 1B1.13 is "not applicable." *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020) (quotation marks omitted). Accordingly, this Court is empowered to consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release," and is not bound by Guideline § 1B1.13. *Id.* at 237.

Courts have granted modified sentences in light of COVID-19 for defendants with illnesses or injuries that make them particularly vulnerable to COVID-19. *See, e.g.*, *United States v. Yu*, No. 90 Cr. 47, 2020 WL 6873474, at *4 (S.D.N.Y. Nov. 23, 2020) (collecting cases). Sosa's BOP medical records indicate that he has been diagnosed with Type II diabetes and hypertension, both of which, as this Court has previously recognized, can render individuals more vulnerable to COVID-19. *Zukerman*, 451 F.Supp.3d at 334.

Although Sosa is fully vaccinated against COVID-19, it is unclear on the record before the Court whether Sosa has had the opportunity to receive a third "booster" dose of the vaccine. Def. Supp. Mem. at 6. Courts in this district have generally found that the vaccine provides "significant protection against serious illness or death should [a defendant] contract COVID-19," and have thus denied release on compassionate release grounds in such cases. *United States v. Diaz*, No. 19 Cr. 65, 2021 WL 2018217, at *1 (S.D.N.Y. May 20, 2021). However, the bulk of such decisions pre-date the emergence and rapid transmission of the Omicron variant. Though the vaccines still provide substantial protection against hospitalization and death, preliminary clinical data indicates that the vaccines' effectiveness no longer remains as robust against Omicron, particularly for individuals like Sosa, with numerous underlying comorbidities. For instance, one study, based on clinical data from South Africa, where Omicron was first discovered, demonstrates that the vaccines have a 70% effectiveness rate against hospitalization from Omicron, as compared to 93% effectiveness against the prior Delta variant.[2] Another study of fully-vaccinated individuals by the Centers for Disease Control and Prevention ("CDC") found that "[a]ll persons with severe outcomes" including hospitalization and death had at least one "risk factor,"—age, immunosuppression, or an underlying comorbidity, including diabetes— and that 77.8% of those who died had four or more risk factors.[3] CDC Director Rochelle Walensky cited this study as evidence that the "overwhelming number of [recent] deaths" from COVID-19 occur in people with multiple co-morbidities.[4] Finally, COVID-19 cases are rising at Reeves. As of January 24, 2022, 83 inmates at Reeves were confirmed to have active cases of

---

[2] Shirley Collie et al., *Effectiveness of BNT162b2 Vaccine Against Omicron Variant in South Africa*, N. ENG. J. MED. (Dec. 29, 2021), https://www.nejm.org/doi/full/10.1056/NEJMc2119270.

[3] Christina Yek et al, *Risk Factors for Severe COVID-19 Outcomes Among Persons Aged ≥18 Years Who Completed a Primary COVID-19 Vaccination Series — 465 Health Care Facilities, United States, December 2020–October 2021*, 17 MMWR Morbidity Mortality Weekly Rep. 19, 19–21, (January 7, 2022), https://www.cdc.gov/mmwr/volumes/71/wr/pdfs/mm7101a4-H.pdf.

[4] *CDC Director Responds to Criticisms on COVID-19 Guidance*, GOOD MORNING AMERICA (Jan. 10, 2022), https://www.goodmorningamerica.com/news/video/cdc-director-responds-criticisms-covid-19-guidance-82131389.

COVID-19.[5]  For these reasons, a number of courts in this district have recently granted compassionate release on the ground that the "wildly contagious Omicron variant [] constitutes an extraordinary and compelling reason to grant the requested relief." *United States v. Rose*, No. 3 Cr. 1501, 2022 WL 19174, at *1 (S.D.N.Y. Jan. 3, 2022); *see also, e.g.*, *United States v. Brunetti*, No. 01 Cr. 257, 2022 WL 92753, at *4 (S.D.N.Y. Jan. 10, 2022).

III.  Section 3553 Factors

The Court further finds that the § 3553 factors do not counsel against granting the requested relief at this point.  Sosa was initially sentenced to ten years in prison.  ECF No. 337.  There is no doubt that the nature of Sosa's criminal conduct was extremely serious.  But the Court credits Judge Scheindlin's finding at sentencing that even though Sosa was found with weapons in his possession, there is no proof that he engaged in violence.  ECF No. 340 at 23.  *See also United States v. Scparta*, No. 18 Cr. 578, 2020 WL 1910481, at *8 (S.D.N.Y. Apr. 20, 2020) (noting that non-violent nature of defendant's otherwise serious crimes weighed in favor of release).  Sosa has been incarcerated since July 2014, 7/23/2014 Dkt. Entry, and is due to be released in just over a year.  Factoring in good time credits, Sosa has already served nearly 90% of his sentence.  Moreover, as to the need to "protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2)(C), Sosa is subject to an Immigration and Customs Enforcement ("ICE") detainer, and will likely be deported upon his release.  The risk he poses to the community is, therefore, limited.  *See Brunetti*, 2022 WL 92753, at *6.  The length of time Sosa has already served in prison is sufficient to "promote respect for the law, . . . provide just punishment . . . [and] afford adequate deterrence."  18 U.S.C. § 3553(a)(2)(A)–(B).

The Court must also take into account that when Judge Scheindlin sentenced Sosa in 2015, she could not have anticipated the pandemic and its effect on Sosa's term of incarceration.

---

[5] *COVID-19 Cases*, Fed. Bur. of Prisons (last visited Jan. 24, 2022), https://www.bop.gov/coronavirus/.

Sosa describes "dreadful" and unsanitary living conditions, inadequate medical facilities, and ongoing COVID-19 outbreaks at Reeves.  Def. Mem. at 2.  As other courts in this district have found, "the sentence [Sosa] is now serving looks materially different from the sentence the Court envisioned."  *United States v. Garcia*, 505 F. Supp. 3d 328, 332 (S.D.N.Y. 2020); *see also United States v. Marmolejos*, No. 19 Cr. 626, 2021 WL 807128, at *5 (S.D.N.Y. Mar. 3, 2021).  And finally, in looking to the "history and circumstances of the offender," the Court credits the many strides Sosa has made towards rehabilitation and improving his life, including obtaining his GED and maintaining a clean disciplinary record while incarcerated.  Under these circumstances, the Court finds that a reduction in Sosa's sentence is warranted pursuant to § 3553.

## CONCLUSION

Accordingly, Sosa's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is GRANTED.  Sosa is resentenced to time served, and five years of supervised release, subject to any detainer.  Sosa is to be released to ICE custody for the purposes of initiating his removal to the Dominican Republic.  This order is STAYED for twenty-one days to allow Sosa to make any applications to ICE regarding the immigration detainer, and to allow the BOP to make all necessary arrangements for Sosa's release into ICE custody.  *See Brunetti*, 2022 WL 92753, at *7.

SO ORDERED.

Dated: January 24, 2022
New York, New York

_____
ANALISA TORRES
United States District Judge